UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:21-cr-00020-GFVT-MAS-1 |
| v. | ) | |
| | ) | |
| TERESA MAE SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

**DETENTION OPINION & ORDER**

The Indictment alleges that Defendant Teresa Mae Smith ("Smith") conspired to distribute 40 grams or more of fentanyl as well as unspecified quantity of methamphetamine all in violation of 21 U.S.C. §§ 846 and/or 841(a)(1). [DE 1]. The United States orally moved for pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(C). [DE 15]. The Court conducted a detention hearing on December 8, 2021 and afforded both sides all procedural rights outlined in the Bail Reform Act ("BRA"). [DE 26].[1] The Government urged detention based on nonappearance and danger risks. Under Federal Rule of Appellate Procedure 9(a) and for the reasons discussed in this opinion, the Court finds, per the respective evidentiary standards, that detention is warranted on both nonappearance and danger grounds. The BRA requires Smith's pretrial detention in this case.

## I.     BRA FRAMEWORK

Given the charges, a detention presumption arises under the BRA as to both nonappearance and danger risk. 18 U.S.C. § 3142(e)(3)(A). The BRA and *United States v. Stone*, 608 F.3d 939,

---

[1] The Court had previously continued the proceeding on Defendant's motion due to defense witness unavailability. [DE 17].

1

945–46 (6th Cir. 2010), frame the resulting inquiry.  The presumption imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some evidence" that he poses neither a flight nor a danger risk.  *Stone*, 608 F.3d at 945; *see also United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (imposing a responsive burden on the defendant to produce "some evidence that he will not flee or endanger the community if released"); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (requiring the defendant to "produc[e] probative, credible evidence to rebut the presumption and support his contention that he will appear . . . and [that] he does not pose a danger").  The production burden "is not heavy," and the Government retains the ultimate burden of persuasion. *Stone*, 608 F.3d at 945.  An unrebutted presumption requires detention.  A rebutted presumption remains a pro-detention statutory factor.  *See id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

Where a defendant rebuts the presumption, the burden shifts back to the United States. Detention premised on nonappearance requires preponderant evidence of flight risk.  *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006).  Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety.  18 U.S.C. § 3142(f).  The analyses are distinct.  Conditions that sufficiently target nonappearance risk may not adequately address danger potential.  *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2nd Cir. 2001).  Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance.  *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release

2

component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply in the detention hearing context.  18 U.S.C. § 3142(f).  The key is simply evidentiary reliability and accuracy.  *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998).  Given hearing informality, the Court properly considers a wide range of proof.  The nature and quality of proof, though, impacts its probative value and weight in the detention calculus.  The § 3142(g) factors ultimately drive the overarching analysis.

## II.    ANALYSIS

As an initial matter, the Court finds that Defendant has overcome the presumption as to both nonappearance and danger.  However, the Court concludes that the Government has shown that it is more likely than not that the available conditions would not, under the circumstances, reasonably assure Smith's appearance at future hearings.  The Court also finds that the Government has shown by clear and convincing evidence that no combination of conditions can reasonably assure community safety.  Smith thus must remain in custody pending trial in this matter.

### A.    RISK OF NONAPPEARANCE[2]

At the outset, the Court finds that Defendant introduced sufficient credible proof to meet her minimal production burden and rebut the presumption as to nonappearance.  Defendant

---

[2] There are no apparent flight concerns.  The Court focuses on nonappearance risk, as did the parties.

presented testimony from her youngest daughter, Ashley Strickland ('Strickland"), at the detention hearing.  [*See* DE 30].  Strickland testified that Smith would be welcome to reside at Smith's father's home in Frankfort, Kentucky with Smith's father and oldest daughter, Megan Smith ("Megan").  Strickland's testimony characterized the residential environment as relatively stable and confirmed that Smith's father would be willing, to the extent he is able, to assist with monitoring Smith's compliance.  Strickland further observed that Smith is reliable when committed to sobriety and drug treatment.  These facts are sufficient to overcome the presumption as to nonappearance risk.  The burden thus rests on the United States to demonstrate that conditions are not adequate to assure Smith's future appearances.

1.    <u>Nature and Circumstances of the Offenses</u>

The Court first assesses "the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance[.]"  18 U.S.C. § 3142(g)(1).  The charged offenses here involve distribution of methamphetamine and an aggravated quantity (40 grams or more) of fentanyl, a particularly dangerous substance.   The resulting detention presumption signals Congress's belief that defendants charged with such offenses present inherent flight and/or nonappearance risk.  *United States v. Downsbrough*, No. 3:13-CR-61, 2013 WL 2447858, at *1 (E.D. Tenn. June 5, 2013) (citing *United States v. Stone*, 608 F.3d 939, 947 n. 6 (6th Cir. 2010) (noting that Congress has attached a presumption to those types of crimes, such as drug trafficking, which indicate a "strong probability" that the perpetrator will flee).  Though rebutted, the presumption persists as a pro-detention consideration.  *See Stone*, 608 F.3d at 945. Moreover, the drug charges here are linked with Defendant's personal history of severe substance use disorder struggles.  For these reasons, this factor favors detention.

## 2.    <u>Weight of Flight Evidence and Defendant's History and Characteristics</u>

The second factor the Court must consider is the weight of the evidence that Smith presents a risk of nonappearance.  18 U.S.C. § 3143(g)(2).  *See United States v. Sykes*, No. 04-cr-80623, 453 F. Supp. 3d 1011, 1015–16 (E.D. Mich. Apr. 13, 2020) (citing *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010)) (noting that, in this Circuit, the § 3142(g)(2) factor looks only to the weight of the evidence that the defendant is a flight/nonappearance risk or a danger); *accord United States v. Sanders*, 466 F. Supp. 3d 779, 785 (E.D. Mich. 2020).  The third BRA factor assesses Defendant's history and characteristics, namely, her substance use disorder history, criminal background, record concerning court appearances, and employment history.  *See* 18 U.S.C. § 3142(g).  Because these categories of information, together with the nature of the instant controlled substance allegations, supply the proof relevant to the applicable (g)(2) analysis, the Court considers these factors in conjunction.  They collectively weigh in favor of finding that Defendant presents a substantial risk of nonappearance if released pretrial in this case.

The record confirms that Smith has a lengthy history of struggling with substance use disorder.  Smith reported that, in addition to other substances at other intervals, she was a daily user of heroin/fentanyl[3] and methamphetamine prior to her May 2021 arrest on state charges related to the instant federal case.  [Pretrial Services Report ("PSR") at 3].  It is particularly concerning that these substances mirror the instant methamphetamine and fentanyl charges, and the charged quantity of fentanyl further highlights the likely amount of the substance Smith was consuming with regularity immediately prior to her arrest.  Per the PSR, Smith has used alcohol and other substances occasionally from the very early age of 12, and her drug use has ostensibly

---

[3] In the context of this Detention Opinion, the distinction between heroin and fentanyl is irrelevant, and the Court refers to the substances essentially interchangeably for these purposes.

spiked over the preceding 3-4 years as it progressed to daily heroin and methamphetamine use. [*Id.*].  Though Smith has engaged with drug treatment for various periods in the past, it does not appear that she has achieved long-term success with those programs, and the details and intensity of such programming is unknown.  [*Id.* at 4].

Smith's treatment, reported substance use, and criminal history all are consistent with Strickland's testimony that Smith is capable of being stable for intervals when firmly committed to sobriety, but is unpredictable during periods dominated by heavy substance use.  These facts introduce some concern about Smith's consistent participation in any ordered treatment and her potential turbulence if she disengages with it and falls off the rails.  Smith's substance use disorder history weighs in favor of detention based on nonappearance risk.  *See, e.g.*, *United States v. Valentin-Cintron*, 656 F. Supp. 2d 292, 296 (D.P.R. 2009) ("As a frequent drug user defendant constitutes a 'flight risk.'").

Smith's criminal history overlaps significantly with and appears to stem in large part from her substance use disorder.  Smith has a (dated) conviction for first-degree trafficking in cocaine form 2005 in Versailles, Kentucky, that further involved a violation of her resulting probation term.  [PSR at 5].  She also has a 2013 conviction for driving under the influence of alcohol or drugs.  In 2014, she was charged with possession of a controlled substance in Richmond, Kentucky, but those charges were ultimately dismissed.  In August 2017, Smith was charged with possession of methamphetamine and opiates, in addition to several related counts; those charges are still pending.  [*Id.* at 6].  Smith was on bond for those charges at the time she allegedly committed the instant federal controlled substance offenses (May 2021), and the PSR reflects three bench warrants in that case issued after Smith failed to appear for various proceedings between

2018 and 2021. In 2018, Smith was charged again in Versailles with trafficking, this time in heroin and methamphetamine, though those charges were later dismissed. [*Id.* at 7].

In August 2019, in Louisville, Kentucky, Smith was convicted of and sentenced to two years of probation for attempted possession of heroin. She violated her release terms in January 2020 and was found in violation of probation in the case. Smith was also on conditional release for this offense at the time of the instant alleged charges. She further failed to appear on two occasions in relation to the case. Finally, in February of 2021, Smith was convicted in Frankfort of possession of heroin and was sentenced to probation. She was on probation for this offense, as well, at the time of the instant charges. [DE 8]. In addition to her drug-related history, Smith's background reflects some minimal violence, as she was convicted of assault (domestic violence) in 2017; she also failed to appear for a hearing in that matter. [*Id.* at 7].

Collectively, Smith's history reflects serious, overlapping nonappearance concerns. Her substance use disorder is intimately entwined with her prior criminality. And, given the lack of effective treatment to date and the 2017-present descent into heavy heroin and methamphetamine use, Smith's current recovery posture appears somewhat shaky. Incarceration on the related state offenses involuntarily prompted Smith's current period of sobriety, and her non-custodial commitment to it is uncertain, on this record. In recent years, it appears that Smith has been unable to control her substance use disorder, leading to numerous criminal interactions and charges. More concerningly, she has recently and frequently failed to appear for substantial proceedings (arraignments, preliminary hearings, etc.) in serious felony criminal matters. *See United States v. Gibson*, 384 F. Supp. 3d 955, 964 (N.D. Ind. 2019) (finding multiple failures to appear aggravating); *accord United States v. Gumora*, No. 20-CR-144 (VSB), 2020 WL 1862361, at *7 (S.D.N.Y. Apr. 14, 2020). *Cf. United States v. Munoz-Hernandez*, No. CR 12-0128 JB, 2012 WL

7

5476892, at *11 (D. N.M. Nov. 5, 2012) (finding it aggravating in the BRA context where a defendant's failures to appear arise in connection with felony matters).

Additionally, Smith has violated conditions of probation and other conditional release on several prior occasions, as discussed.  Indeed, she apparently was on conditional release in relation to *three separate felony drug cases* at the time of the instant alleged federal (also felony drug) offenses.  *See* 18 U.S.C. § 3142(g)(3)(B) (considering "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release" in relation to a different criminal case).  All of these facts are heavily aggravating and demonstrate significant risk that Smith would not comply with any release conditions and that she would fail to appear for proceedings in this case as directed.

Nor are there any substantially mitigating flight facts, on the current record.  Of course, Defendant's lifetime residence in the local community and her enduring relationships with her father and daughters, and their continuing support, reflect very positively on Smith.  However, though these considerations may bear on flight risk, they give little indication as to whether Smith would consistently appear for hearings in this case, particularly in light of the history discussed above.  The Court knows little concrete details about Smith's father and her oldest daughter, Megan, with whom she would intend to reside if released.  Further, though Smith has some admirable prior employment, it has been spotty, and she was unemployed for an exceptionally long period between 2008 and 2020.[4]  *See United States v. Stidham,* No. 3:10-CR-79, 2010 WL

---

[4] It appears that Smith may currently be disabled and unable to work.  [PSR at 2].  The Court, of course, does not find Smith's current unemployment or disability to be a pro-detention consideration.

8

2639925, at *3 (E.D. Tenn. June 25, 2010) (weighing lengthy periods of unemployment in favor of detention).

On balance, these aspects of Smith's personal life and character do not meaningfully tip the scales in either direction as to flight. Nor do they outweigh the many serious concerns here noted. The Court thus finds that the second and third BRA factors, like the first factor, weigh in favor of finding that Smith presents a risk of nonappearance.[5]

### 3.   <u>Availability of Flight Conditions</u>

In light of the considerable nonappearance risks posed by Smith's substance use disorder, her history of criminal offenses, her numerous violations of conditional release, and her many failures to appear for serious criminal proceedings, the Court does not find that available conditions could adequately target the varied concerns and reasonably assure Smith's appearance. Defendant has a demonstrated history of violating conditions of release in relation to drug cases, a pattern that surely arises in large part from Defendant's heroin and methamphetamine use and, relatedly, impaired judgment and appreciation of consequences. The Court thus is not reasonably confident, as a foundational matter, that even drug testing/treatment and home detention/GPS monitoring, would deter Smith from obtaining and using controlled substances, given the severity and longevity of her substance use disorder. And, critically, the record demonstrates Smith's unreliability in terms of court appearance during periods that appear to correlate with heavy drug use.

Nor does the presence of Smith's father and daughter, Megan, at the proposed residence assuage the persisting concerns. Per Strickland, Smith's father—despite apparent genuine desire

---

[5] The fourth BRA factor, the nature and seriousness of the danger, is inapplicable to the flight analysis.

to support Smith—is elderly, not consistently mobile, and chronically unwell.  And the Court lacks essential information about Megan that might otherwise cure the supervision concerns at the residence.  Strickland, though residing locally and nearby, does not live at the home.  Together, these circumstances prompt doubt that the Court could impose consistent, effective supervision and monitoring at the proposed residence, as is needed to safeguard Smith's sobriety and ensure that she is able to travel to and from proceedings as required.

Accordingly, the Court finds by a preponderance of the evidence that the available conditions cannot reasonably assure Smith's appearance.  Detention on this basis is thus required.

**B.**     **RISK OF DANGER**

Much of the applicable danger analysis in this case tracks the Court's previous discussion of Smith's substance use history, her criminal history (comprising both drug and violent offenses), and her poor track record on conditional supervision.  The Court thus incorporates and references its prior analysis throughout.

As an initial matter, the Court finds that Defendant has rebutted the detention presumption as to danger risk for the reasons previously stated in relation to flight—namely, Strickland's testimony about Smith's family's support on her recovery journey, her father's willingness to let Smith reside at his home with him, and Smith's prior stability and success (in the short-term, at least) when committed to drug treatment and sobriety.  These facts supply at least some credible, probative evidence that the Court could fashion conditions to target Smith's danger risk.  However, for the reasons stated below, the Court nonetheless finds by clear and convincing evidence that conditions would not be reasonably effective in protecting the community if Smith were released.

1.     **Nature and Circumstances of the Offense**

The Court first assesses "the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance[.]" 18 U.S.C. § 3142(g)(1).  As noted, the charges allege Smith's distribution of methamphetamine and 40 grams or more of fentanyl. Fentanyl, particularly in that quantity, is exceptionally dangerous and deadly.  Methamphetamine wreaks equal havoc on communities.  Both substances frequently drive related, dangerous, and sometimes violent criminal activity.  That these substances are both woven throughout Smith's criminal history and have personally plagued her in recent years enhances the danger concern associated with the charged offenses.  And, the quantity of fentanyl alleged in the Indictment suggests that Smith is involved in a relatively large-scale drug trafficking operation.

Accordingly, and in light of the persisting presumption as to danger, the nature and circumstances of the offenses charged here heavily favor detention.  *See United States v. Bucio*, No. CR 5:17-055-DCR, 2019 WL 4397334, at *3 (E.D. Ky. Sept. 13, 2019) (recognizing that "the nature and circumstances of the offense in issue weigh[ed] in favor of" detention where "they ar[o]se in the context of a large drug trafficking scheme"); *see also United States v. Lattner*, 23 F. App'x 363, 364 (6th Cir. 2001) (quoting *United States v. Martir*, F.2d 1141, 1144 (2d. Cir. 1986) (noting the persisting presumption, even if rebutted).

2.     **Weight of Danger Evidence**

The second danger factor considers only the weight of dangerousness evidence, not the weight of the evidence of Smith's guilt.  18 U.S.C. § 3142(g)(2); *Stone*, 608 F.3d at 948.  The Court does not make any pretrial assessment of the Government's proof on the substantive offense elements.  The overarching consideration driving the Court's analysis of this factor in the danger context is the obvious causal role Smith's substance use disorder has historically played in her

11

substantial and lengthy criminal background.  Per the record, Smith has demonstrated an inability to avoid serious criminal trouble or to reliably comply with release conditions when using heroin and/or fentanyl and methamphetamine.  Smith's criminality ratcheted up in 2017, around the commencement of her self-reported daily methamphetamine and fentanyl use.  [PSR at 3, 6].  Since that time, Smith has been engaged in heroin/fentanyl and methamphetamine trafficking and committed an assault.  Moreover, it appears that Smith's personal addiction has in large part driven her drug trafficking conduct and its escalation over the past several years.

Importantly, drug trafficking presents a serious danger to the community that counsels detention under the BRA.  *See, e.g.*, *United States v. Pina-Aboite*, 97 F. App'x 832, 836 (10th Cir. 2004) (emphasizing that "the danger-to-the-community factor is not simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community").  Smith's instant alleged distribution is especially concerning because it appears to involve large volumes of fentanyl, indicating a relatively large-scale trafficking operation; large-scale and -volume schemes present the greatest risk for continued trafficking conduct if released.  *See United States v. Santiago-Pagan*, No. 1:08-CR-0424-01, 2009 WL 1106814, at *7 (M.D. Pa. Apr. 23, 2009) (concluding that the defendant's alleged participation in a conspiracy to distribute "a large quantity of narcotics cuts strongly against his motion for release pending trial" because "[t]he seriousness of the crimes alone . . . allows the court to draw the inference that defendant will simply continue his alleged narcotics activity if released") (collecting supportive cases).  Additionally, her history of addiction and local drug trafficking conduct has surely produced a network of criminal contacts and associates, many undoubtedly unknown to law enforcement or the Court, that could facilitate Smith's continued involvement in the drug trade.

12

Ultimately, Defendant's ability to avoid criminal trouble (namely, continued drug trafficking) and to comply with conditions appears to be directly tied to her sobriety, which is currently tenuous. Defendant has demonstrated a lack of concern for consequences of noncompliance. The weight of evidence in the record substantiates serious risk that Defendant, driven by personal substance use disorder, may reengage in drug trafficking as she has in the past. Such a risk presents grave danger to the community, and this factor firmly favors danger-based detention.

### 3.   <u>Defendant's History and Characteristics</u>

This factor favors detention for the reasons discussed in the Court's flight analysis of this factor and already outlined at length as to dangerousness evidence weight: Defendant's extended, drug-related criminal history, her many prior probation and other release violations, and her history of personal drug use. *See* 18 U.S.C. § 3142(g)(3)(A) (considering the defendant's past conduct, criminal history, and history relating to drug or alcohol abuse). Smith was on release in relation to three felony cases at the time of the instant alleged offenses, signaling a flagrant disregard for court-imposed conditions or community safety. *See id.* § 3142(g)(3)(B). All of these considerations indicate significant risk that Smith would engage in distribution of heroin/fentanyl or methamphetamine if released pretrial. The third BRA factor thus weighs in favor of detention based upon danger risk.

### 4.   <u>Nature and Seriousness of the Danger Risk</u>

The fourth and final factor evaluates "the nature and seriousness of the danger to any person or the community that would be posed by the person's release[.]" 18 U.S.C. § 3142(g)(4). As reflected in the PSR, since approximately 2017, Smith has been engaging in unremitting, escalating drug use and trafficking conduct. Her criminal history tracks a progression from alcohol

13

and marijuana use, to cocaine use and distribution, to methamphetamine and fentanyl use and trafficking.  The risk that Smith may continue to not only use and possess, but distribute, methamphetamine and the indicted quantity of fentanyl places the community in serious danger. *See, e.g., United States v. Flowers*, No. 3:05-CR-72, 2005 WL 1981364, at *4 (E.D. Tenn. Aug. 17, 2005) (observing that the "sale of drugs [ ] establish[es] a significant danger" to the community).  This factor thus also favors detention based on the serious danger risk present.

   5.   <u>**Availability of Danger Conditions**</u>

   All of the BRA factors favor a finding of dangerousness in this case.  Nor, under the circumstances, can even the most restrictive of conditions (home detention and/or locational monitoring and drug treatment/testing) reasonably assure community safety.  Treatment has not been entirely effective in Smith's past, and the Court lacks any information about the propriety or availability of inpatient treatment options in Smith's case.  Further, as discussed in detail in relation to flight conditions, Smith's proposed living situation offers little external supervision and monitoring.  Finally, in light of Smith's entrenched involvement in drug use and distribution in the local area, the Court is not persuaded that locational limitations would curb any drug activities. *United States v. Nova*, No. CR 16-060-02 S, 2016 WL 6471205, at *2 (D.R.I. Nov. 1, 2016) (finding that electronic monitoring and home detention conditions would not be effective to mitigate danger where the defendant could easily participate in the charged heroin distribution scheme from his home).

   Accordingly, the Court concludes that the Government has shown, by clear and convincing evidence, that no combination of available conditions can reasonably assure community safety in light of the serious danger risk in this case.

### III.   CONCLUSION

For the reasons thoroughly discussed, the Court finds by a preponderance of the evidence that no conditions can reasonably assure Smith's appearance in this case.  The Court further finds by clear and convincing evidence that no combination of conditions can reasonably assure community safety.  Detention based both on nonappearance risk and on danger risk is thus warranted under the BRA.  Defendant shall remain in custody pending trial in this matter.

Accordingly, the Court **GRANTS** the United States' oral detention motion.  The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this the 20th day of December, 2021.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge

15